**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES K. BISHOP, | : | Case No. 2:26-cv-15 |
| Plaintiff, | : | |
| vs. | : | Chief Judge Sarah D. Morrison<br>Magistrate Judge Peter B. Silvain, Jr. |
| OHIO DEPARTMENT OF CORRECTIONS, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS[1]**

Plaintiff filed a *pro se* civil rights Complaint in this Court pursuant to 42 U.S.C. § 1983. (Doc. #5). By separate Order, the Court granted Plaintiff's request to proceed *in forma pauperis*. (Doc. #4).

This matter is now before the Court for a *sua sponte* review of Plaintiff's Complaint to determine whether the Complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Also before the Court is Plaintiff's Motion for Appointment of Counsel. (Doc. #2).

For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's Complaint be **DISMISSED**.

## I. Screening Legal Standard

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

whose filing fee and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id*.; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*, 490 U.S. at 328–29; *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (citing *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Though by the same token, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470–71 ("[D]ismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim [under §§ 1915A(b)(1) and

1915(e)(2)(B)(ii)].”).

“A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not “accept as true a legal conclusion couched as a factual allegation.” *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain “detailed factual allegations,” it must provide “more than an unadorned, the-defendant-unlawfully-harmed-me accusation.” *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers “labels and conclusions” or “a formulaic recitation of the elements of a cause of action will not do.” *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders “naked assertion[s]” devoid of “further factual enhancement.” *Id*. at 557. The complaint must “give the defendant fair notice of what the … claim is and the grounds upon which it rests.” *Erickson*, 551 U.S. at 93 (citations omitted).

## II. Allegations and Parties

Plaintiff names as Defendants: NCI Warden Forshey; Mr. Cobb, NCI Inspector in charge of responding to grievances; Mr. Perkins, NCI Lieutenant in charge of the mailroom; Ohio Department of Rehabilitation and Correction (“ODRC”) Director Annette Chambers-Smith; L. Holiday, NCI mailroom clerk; and an unknown supervisor (“John Doe Supervisor”) who destroyed legal documents from Kroll Restructuring. (Doc. #5, *PageID* #65).

Plaintiff states that in July 2025, *legal* mail from a New York-based firm named Kroll Restructuring, pertaining to personal injury claims that Plaintiff filed in New York against Purdue Pharma, was sent to Plaintiff at NCI. *Id*. at 66. Because the mail did not have the control number that ODRC requires for legal mail, it was treated as *regular* mail rather than legal mail.

(Doc. #5-3, *PageID* #86). Defendants Holiday and Perkins withheld the mail from Plaintiff because, as regular mail, it contained more than the allowed number of pages (5), as well as a flash drive that was not previously approved. (Doc. #5, *PageID* #66; Doc. #5-3, *PageID* #s 86-87). Plaintiff pursued several avenues to obtain the withheld mail.

On July 29, 2025, Plaintiff filed an appeal to Warden Forshey, which Plaintiff states that Forshey never ruled on. (Doc. #5, *PageID* #66). Plaintiff also filed a grievance to point out, among other things, that the New York sender of the mail was likely unaware of Ohio's procedures for sending legal mail. But Defendant Perkins denied the grievance because the mail at issue did not have the required control number and was thus treated as regular mail. Plaintiff escalated the grievance on July 30, 2025, arguing that it was not proper to withhold legal mail that did not pose a threat, just for containing too many pages.[2] Defendant Cobb responded that the mail was withheld not because it posed a threat, but because it contained a hard drive not previously approved, as well as a pamphlet that did not come through the institution book program, and thereby constituted contraband. (Doc. #5, *PageID* #s 66-67; Doc. #5-3, *PageID* #86). Plaintiff also notes that in July 2025, he sent several kites to Defendants Cobb and Perkins imploring for the proper delivery and/or return of legal mail he anticipated receiving, since the mail involved "a time sensitive matter." (Doc. #5, *PageID* #66).

Plaintiff continues that on July 31, 2025, Defendant Cobb ordered a "John Doe Supervisor" to destroy the legal mail as contraband, which the John Doe Supervisor did. *Id*. at 67. That legal mail, Plaintiff explains, contained vital documents he needed to sign and return in

[2] Plaintiff attaches a copy of the "Notice of an Unauthorized Item Received / Withholding of Incoming Mail" that was issued to him on July 28, 2025. It includes language advising the recipient of the right to appeal stating, among other things, that "[t]he appeal should explain why the correspondence does not present a threat to the security and safety of the institution, its staff, or the incarcerated population." (Doc. #5-3, *PageID* #s 83-84).

order to proceed with his personal injury claims against Purdue Pharma.

Plaintiff states that on October 10, 2025, he received a letter from Purdue Pharma stating that Plaintiff was deficient in his claim(s) against Purdue Pharma because he failed to respond to the July 2025 mailing from Kroll Restructuring. *Id*. Plaintiff contacted a lawyer who had previously represented Plaintiff in another matter for help getting the information Plaintiff needed to pursue his claims—the information and documents that were destroyed in July—but it appears that neither that lawyer, nor an associate whose help the lawyer sought, were able to assist Plaintiff. (Doc. #5-3, *PageID* #s 96-99).

Plaintiff contends that he was deprived of his First Amendment rights to redress and/or access to the court by Defendants Perkins' and Holiday's withholding of his legal mail and by Defendants Cobb's and John Doe Supervisor's destruction of his legal mail. Plaintiff further contends that Defendants Chambers-Smith's and Forshey's failure to train and/or hire competent employees contributed to the denial of Plaintiff's rights to redress and access to the courts. Finally, Plaintiff argues that Defendants Perkins and Cobb retaliated against Plaintiff by preventing him from taking advantage of the grievance process through machination, misrepresentation, and/or intimidation in violation of state law and his federal Fourteenth Amendment rights.

In relief, Plaintiff seeks: (a) "preliminary and permanent injunctive relief against [NCI] staff, 'and [their] agents,' to 'immediately order the NCI staff at the facility to follow ODRC rules and/or restriction to prevent further injuries to inmates. In addition to retraining those in the proper procedure concerning legal mail"; (b) compensatory damages in the amount of $11,594,746.40 from Defendants' employer; (c) punitive damages in the amount of $500,000.00 against Defendant Perkins, $500,000.00 against Defendant Holiday, $500,000.00 against

Defendant Chambers-Smith, $500,000.00 against Defendant Cobb, and $500,000.00 against Defendant unknown supervisor; (d) all costs involved with this action; (e) any other relief that the Court determines just, proper, and equitable; and (f) a trial by jury on all issues triable to a jury. (Doc. #5, *PageID* #s 71-72).

## III. Analysis

Based on the above allegations, Plaintiff raises, pursuant to 42 U.S.C. § 1983, in Counts One and Two, First Amendment claims of denial of his rights to redress and/or access to the Courts; in Counts Three and Four, denial of his rights to redress and/or access to the Courts stemming from the failure of Defendants Chambers-Smith and Forshey to train and/or hire competent employees; and in Count Five, a retaliation claim against Defendants Perkins and Cobb in violation of state tort law and the Fourteenth Amendment. Plaintiff sues all Defendants in their individual and official capacities. (Doc. #5, *PageID* #64). For the reasons set forth below, the undersigned **RECOMMENDS** that all of Plaintiff's claims be **DISMISSED**.

### A. Official Capacity Claims for Monetary Damages

As a preliminary matter, Plaintiff's claims against Defendants in their official capacities are subject to dismissal to the extent that he seeks monetary damages. Absent an express waiver, a state is immune from damages suits under the Eleventh Amendment. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (and cases cited therein); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes No. 1 and No. 2*, 694 F.2d 449, 460 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is

essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663 (citations omitted); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945). A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Because all of the properly named Defendants are immune from suit in their official capacities to the extent that Plaintiff seeks monetary damages, the claims against the properly named Defendants in their official capacities should be **DISMISSED** with prejudice.

### B. Counts One and Two – First Amendment Rights to Receive Mail and for Access to the Courts

Plaintiff sues Defendants Perkins and Holiday in Count One for withholding his legal mail without justification in violation of his First Amendment rights to redress and access to the Courts. (Doc. #5, *PageID* #s 67-68). In Count Two, Plaintiff sues Defendants Cobb and the John Doe Supervisor for destroying his legal mail from Kroll Restructuring without justification, in violation of his First Amendment rights to redress and access to the Courts. There are two components to this First Amendment claim: (1) denial of access to the Courts, and (2) denial of the right to receive mail. But here, Plaintiff fails to state a claim on either component.

Under the First Amendment, prisoners have a fundamental right of access to the Courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To set forth a viable denial-of-access-to-the-courts action under the First Amendment, Plaintiff must demonstrate that he suffered actual injury as a result of the Defendants' actions. *Courtemanche v. Gregels*, 79 F. App'x 115, 117 (6th Cir. 2003). But critically, the injury requirement is not satisfied by just any type of frustrated legal claim. *Id*. Instead, "a prisoner's right of access to the courts is limited to direct criminal appeals, habeas corpus applications, and civil rights claims challenging the conditions of confinement." *Id.* (citing *Lewis v. Casey,* 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Thaddeus–X v. Blatter,* 175 F.3d 378, 391 (6th Cir. 1999)); *Castellon v. Hinkle*, No. 2:20-cv-6420, 2022 WL 3139606, at *2 (S.D. Ohio Aug. 5, 2022). Further, "a prisoner must show an actual injury to existing or contemplated litigation which raises nonfrivolous claims." *Id.* Here, Plaintiff's allegations and exhibits suggest that Defendants' actions in withholding and destroying his mail prevented him from timely filling out and returning forms in pursuit of *personal injury claims* in a New York federal court. That does not satisfy the injury requirement necessary to state a viable denial-of-access claim under the First Amendment.

As for the second component, "[a] prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citation omitted). Thus, "prison officials who open and read incoming mail in an *arbitrary and capricious* fashion violate a prisoner's First Amendment rights." *Id*. at 873-74 (emphasis added and citation omitted). When a prisoner's incoming mail is "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's

First Amendment right to receive mail, especially correspondence that impacts upon or his import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the court." *Id*. at 874 (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996)). Plaintiff's allegations and exhibits do not permit an inference that he satisfies these standards. First, the undersigned already determined that Plaintiff fails to demonstrate the requisite injury. Additionally, it is questionable whether Defendants' initial seizure of mail from Kroll Restructuring was seizure of *legal mail* sufficient to trigger *Sallier*'s "heightened concern." Even if it did, once Defendants identified the presence of contraband in the form of a hard drive that was not approved ahead of time and a pamphlet that did not comply with the institution's book program, Plaintiff cannot plausibly allege that Defendants acted in an arbitrary and capricious manner, as discussed by *Sallier*, in withholding and destroying the mail in accordance with institution policies. (Doc. #5-3, *PageID* #s 86-87). Moreover, any allegation that prison officials failed to take corrective action after they were notified of a prisoner's complaints about the handling of his mail does not establish § 1983 liability. *See Wilkins v. Southern Ohio Corr. Fac.*, No. 1:21-cv-260, 2021 WL 9031789, at *4 (S.D. Ohio June 2, 2021).

At most, Plaintiff's allegations about the destruction of the flash drive and legal mail, as well as the possible forfeiture of personal injury claims, plead a loss of property. While it is possible that Plaintiff may have state remedies available to him, his allegations fail to state a claim upon which § 1983 relief may be granted. *See, e.g., Johnson v. Chambers-Smith*, No. 2:22-cv-4179, 2023 WL 2555446, at *22 (S.D. Ohio March 17, 2023) (noting that while loss of property generally does not state a due process claim, state tort remedies may be available) (citations omitted).

To survive initial screening, a claim must be plausible, not just possible. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In sum, Plaintiff's Count One and Count Two claims alleging First Amendment violations from the withholding of legal mail and the denial of access to the Courts should be **DISMISSED** without prejudice for failure to state a claim.

**C. Counts Three and Four – Failure to Train**

Plaintiff argues in Counts Three and Four that the failure of ODRC Director Annettee Chambers-Smith and NCI Warden Jay Forshey to train and/or hire competent employees resulted in the withholding and destruction of his legal mail, which contributed to the denial of his First Amendment rights to redress and/or access to the Courts. (Doc. #5, *PageID* #s 69-70). At base, Plaintiff seeks to impose § 1983 liability on Defendants Chambers-Smith and Forshey for their supervisory roles. But § 1983 liability cannot be imposed solely upon the basis of *respondeat superior*. *See generally Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). "In order to find supervisory personnel liable under § 1983, the plaintiff must allege that the supervisor condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *Bennett v. Smith*, 110 F. App'x 633, 635 (6th Cir. 2004) (citation omitted).

Fatal to Plaintiff's claim is that the actions taken by Defendants Cobb, Perkins, Holiday, and the John Doe Supervisor in withholding and destroying Plaintiff's mail from Kroll Restructuring were the result *not* of Chambers-Smith and Forshey failing to train or supervise them, *but* of those officers' enforcement of established ODRC policies concerning legal and regular mail. Plaintiff's own exhibits bear this out. For example, Defendant Cobb

explained, in denying Plaintiff's July 29, 2025, grievance, that Plaintiff's mail was initially held because it was not clearly distinguished as legal mail under AR 5120-9-17(B). (Doc. #5-3, *PageID* #86). Defendant Cobb continued that Plaintiff's mail was then held not because it posed a threat as outlined in 5120-9-17G, but because it contained a hard drive that was not previously approved as stated in 5120-9-19 and was thus handled as contraband in accordance with 5120-9-55. Defendant Cobb stated that Plaintiff's mail also contained a pamphlet that was required to come from the institutional book program and was thus also handled as contraband. Subsequently, Defendant Perkins explained why Plaintiff's mail was withheld and stated that "we are just following policy." *Id*. at 86-87. Thus, the withholding of Plaintiff's mail appears to have been a function of the routine enforcement of institution mail policies—not inadequate training or incompetence.

Beyond the foregoing, Plaintiff raises no additional details or questions about the adequacy of any training processes that would permit the imposition of any § 1983 liability on Chambers-Smith or Forshey for their failure to train employees. In sum, whatever challenge to ODRC's or NCI's policies regarding legal and regular mail might be available to Plaintiff, he cannot show here that the withholding and destruction of his mail in this case was the result of Chambers-Smith and/or Forshey failing to train, supervise, or hire "competent" personnel.

Thus, Plaintiff's Third and Fourth Count Failure-to-Train claims should be **DISMISSED** without prejudice for failure to state a claim.

**D. Count Five – Retaliation/Grievance Procedure**

Here, Plaintiff alleges that Defendants Perkins, Cobb, and Love thwarted him "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." (Doc. #5, *PageID* #70). These allegations fail to state a claim for several

reasons. As a preliminary matter, "Love" is not a named as a Defendant in the section of his Complaint designated for listing Defendants, (*id*. at 65), nor is "Love" named in the Plaintiff's factual allegations, (*id*. at 66-67). In any event, although Plaintiff is not precisely challenging the efficacy of the NCI grievance process or the results of his grievances, it bears noting here that Plaintiff has no constitutionally protected right to an effective prison grievance procedure regardless of the substance of his complaints. *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) (citations omitted).

Most importantly, Plaintiff fails to present allegations from which the Court could infer that actions taken by Perkins, Cobb, and Love in denying Plaintiff's grievances constituted retaliation. To establish a claim of retaliation, Plaintiff must show that:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Wiley v. Kentucky Dep't. of Corr.*, No. 11-97-HRW, 2012 WL 5878678, at *13 (E.D. Ky. Nov. 21, 2012) (citing *Brown v. Crowley*, 312 F.3d 782, 787 (6 th Cir. 2002); and *Thaddeus-X*, 175 F.3d at 394)). Plaintiff does not plausibly allege facts that would allow the Court to find all of these factors. Inmates have a First Amendment right to file non-frivolous grievances, *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), and Plaintiff thus was engaging in protected conduct. But Plaintiff's allegations do not support an inference that Defendants took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; they merely denied his grievances. Nor has Plaintiff pleaded facts plausibly suggesting Defendants' actions were motivated by Plaintiff's protected conduct. All Plaintiff offers are conclusory allegations unsupported by any facts. That is, Plaintiff's allegations and exhibits

show nothing but Defendants' matter-of-fact explanations for why Plaintiff's grievances were denied in accordance with institution policies. (Doc. #5-3, *PageID* #s 85-91). Plaintiff offers no examples or facts from which the Court could plausibly infer manipulation, misrepresentation, or intimidation by the Defendants.

Thus, Plaintiff's Count Five Retaliation claim should be **DISMISSED** without prejudice for failure to state a claim.

## IV. Conclusion

The undersigned concludes that Plaintiff's Complaint should be **DISMISSED** for failure to state any claims upon which § 1983 relief may be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The instant complaint be **DISMISSED** without prejudice; and

2. The Court **CERTIFY** under 28 U.S.C. § 1915(a)(3) that, for the foregoing reasons, an appeal of any Order adopting this Report and Recommendations would not be taken in good faith and therefore **DENY** Plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

September 3, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

## PROCEDURE ON OBJECTIONS

Pursuant to Fed. R. Crim. P. 72(b), **WITHIN 14 DAYS** after being served a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).